UNITED CIGAR–WHELAN STORES CORP. v. H. WEINREICH CO., Inc.

United States District Court
S. D. New York.
July 23, 1952.

Aranow, Brodsky, Einhorn & Dann, New York City, Herbert A. Einhorn, William M. Kaplan, New York City, of counsel, for plaintiff.

Roosevelt, Freidin & Littauer, New York City, Jesse Freidin, Sidney A. Diamond, Emanuel L. Gordon, New York City, of counsel, for defendant.

WEINFELD, District Judge.

In this motion for a declaratory judgment to declare illegal and unenforceable an agreement under which the parties have been operating since 1948 and still are operating, the plaintiff moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and the defendant cross moves for judgment on the pleadings pursuant to Rule 12(c) of the Rules or in the alternative for summary judgment.

The motions are based upon the complaint, the answer, admissions by reason of failure to deny facts set forth in a request for admissions or to serve written objections on the ground of irrelevancy or otherwise as provided by Rule 36.[1]

The parties concede that all the material facts are now admitted and undisputed, that the matter is ripe for judgment and no trial is necessary.

The defendant's motion for judgment on the pleadings may be disposed of at the outset. It has heretofore moved under Rule 12(b) to dismiss the complaint for failure to state a claim upon which relief can be granted or in the alternative that the court, in the exercise of discretion, refuse to entertain jurisdiction of this action. This motion was denied by Judge Clancy. The affirmative defenses of laches and "unclean hands" present no facts other than those already alleged in the complaint. Judge Clancy's denial of the earlier motion to dismiss is, therefore, determinative of the defendant's motion for judgment on the pleadings and the same is accordingly denied.

The plaintiff is engaged in interstate commerce and operates a chain of retail stores in various states. On June 15, 1948, it entered into a written agreement with the defendant by which it bound itself to display and use its best efforts to sell at retail in each of its stores enumerated on a schedule and on any other later added by mutual agreement, costume jewelry purchased exclusively from the defendant. This agree-

---

1. An affidavit submitted by the plaintiff's counsel which analizes the pleadings and admissions and states their claimed legal effect has not been considered on this motion.

ment was renewed with modifications in 1949, 1950 and 1951, the last mentioned being the one currently in effect which by its terms may not be terminated before 1956. The plaintiff contending that various provisions of the present agreement (and of its predecessors as well) offend the Clayton Act, as amended by the Robinson-Patman Act,[2] hereafter called the "Act" seeks a declaration of its consequent invalidity. The relief sought is limited to the executory portion of the contract.

The current agreement, the one with which we are immediately concerned, follows the pattern of the earlier agreements. The plaintiff was to buy all its costume jewelry for the enumerated stores solely from the defendant. The defendant agreed to pay the plaintiff a commission of 2½% of the retail sales price of the jewelry, which was to be a portion of the commissions actually paid by the plaintiff to its employees as incentive to promote the sale of such costume jewelry. The defendant under the agreement further assumed liability for one-half of all wages actually paid by the plaintiff to four supervisory employees engaged in the operation. The defendant has fulfilled these obligations and since the inception of the agreements has paid to the plaintiff commissions of approximately $25,000.

The defendant further undertook to pay the plaintiff a discount of 3% of all jewelry purchased in excess of $125,000 per year, and upon the termination of the agreement, to allow the plaintiff to return any jewelry items then remaining unsold and to pay the plaintiff in cash therefor the invoice prices. The plaintiff's net purchases from the defendant in each of the calendar years of 1949, 1950 and 1951 have exceeded $125,000.

The admissions by the defendant establish the following: As an inducement to the plaintiff to enter into the agreement the defendant orally represented to the plaintiff that the commission, wages and discount payments and the return privilege above outlined had not been, were not and would not be available to any of its customers, all of whom purchase costume jewelry of like grade or quality as the plaintiff; that in fact these payments and the return privilege have not been, are not and will not be available to any such other customers of defendant and have resulted and will result in direct or indirect discrimination in price between the plaintiff and other purchasers of defendant's commodities of like grade or quality. Further, the effect of this price discrimination is substantially to lessen competition and to injure or destroy competition by others with the plaintiff and the defendant. Many of defendant's customers are in competition with plaintiff in the resale of such commodities purchased from the defendant. Finally, the defendant orally represented to the plaintiff that its contributions to salaries of the plaintiff's employees had not been, were not and would not be available on proportionately equal terms to all its other customers competing in the distribution of its costume jewelry; that in fact the contributions made by the defendant to the salaries of plaintiff's employees have not been, are not and will not be available on proportionately equal terms to such competing customers.

■ Section 2(d) of the Act, 15 U.S.C.A. § 13(d), in effect prohibits a seller from paying or contracting to pay a customer for services or facilities unless the payment is available on proportionately equal terms to all other customers competing in the distribution of the commodities. Section 2(e), 15 U.S.C.A. § 13(e), makes it unlawful for the seller to discriminate in favor of one purchaser against another by furnishing or contributing to the furnishing of services or facilities upon terms not accorded all purchasers on proportionately equal terms. The payment of the commissions and the portion of the salaries required under the agreement, plus the admissions that similar contributions have not been, are not and will not be available on proportionately equal terms to all other customers of defendant competing in the distribution of its commodities establish violations of the prohibitions of both sections 2(d) and 2(e). In this instance

2. 15 U.S.C.A. §§ 13(a), 13(c), 13(d), 13(e) and 14.

it is not an essential that this discriminatory payment of salaries lessen competition.

 Section 2(a) of the Act, 15 U.S.C.A. § 13(a), prohibits direct or indirect discrimination by a seller between buyers of its products, the effect of which may be substantially to lessen competition in any line of commerce or to injure, destroy or prevent competition with any person who grants or knowingly receives the benefit of such discrimination or with the customers of either of them. The three percent discount granted to the plaintiff under the agreement together with the defendant's admission as to the effect thereof which closely parallels almost in haec verba the language of the interdicted acts under Section 2(a) establish a violation of the Section. No contention is advanced that the discount covers allowances for differentials specifically permitted by the Section. In the face of the agreement and of the confessed course of conduct in carrying it out, any contention that these sections of the Act have not been violated becomes untenable. Elizabeth Arden Sales Corp. v. Gus Blass Co., 8 Cir., 150 F.2d 988, certiorari denied 1945, 326 U.S. 773, 66 S.Ct. 231, 90 L.Ed. 467.

 The defendant contends that under the ruling of Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219, the illegality of the contract must appear on its face and absent such vice, extrinsic evidence of transactions by defendants with third parties must be offered to establish prohibited discriminatory conduct and further, that in the instant case, its admissions of discrimination towards third parties are inadmissible for the purpose of invalidating the contract. I do not read the Bruce case as establishing such a doctrine, the effect of which would be to place actions based upon violations of the Act in a legal strait-jacket and to grant immunity for violations of the Act unless the parties brazenly flaunted their transgressions by specifically incorporating them in an agreement.

Since a violation of Sections 2(d) and 2(e) is shown, it is unnecessary to pass on the defendant's contention that there has been no violation of 2(c) dealing with the payment of commissions under the guise that services are being rendered to the seller. See Oliver Bros., Inc. v. Federal Trade Commission, 4 Cir., 1939, 102 F.2d 763. For like reason there is no need to discuss whether Section 3 of the Act, 15 U.S.C.A. § 14, which makes it unlawful to impose the condition that the purchaser shall not use or deal in the goods of a competitor of the seller, where the effect may be substantially to lessen competition, has also been violated. It may be assumed in favor of the defendant that the admissions do not specifically state that the obligation to buy the defendant's jewelry exclusively has resulted in lessening competition. Even so the Act has been and is being violated in substantial respects by performance of the agreement.

Whether, in the circumstances, the plaintiff is entitled to judgment in its favor, is no longer open for that question has already been decided by Judge Clancy. In his opinion Judge Clancy said: "Plaintiff here seeks remedy only insofar as the contract is executory. * * * Further we believe that Federal public policy overrules the agreement based on the doctrine of unclean hands or estoppel. See Cleveland C. & C. & St. L. Ry. Co. v. Hirsch, 204 F. 849, decided in this Circuit even before the Declaratory Judgment Act". With the law of the case thus laid down and the basic facts alleged in the complaint having been established by the admissions, judgment for the plaintiff must follow. In re Hines, 2 Cir., 88 F.2d 423; Commercial Union of America, Inc. v. Anglo-South American Bank, Ltd., 2 Cir., 10 F.2d 937.

 Before Judge Clancy the defendant, as already noted, moved to dismiss on the added ground that the court in the exercise of discretion should refuse jurisdiction of the action. In denying this part of the motion, the court necessarily held that this is a proper case in which to render a declaratory judgment. Here we have an agreement, performance of which runs directly counter to the public policy declared in the Act. Continued performance may subject the plaintiff to action by the Federal Trade Commission, to civil suit by ag-

grieved competitors and to possible criminal prosecution. In this situation, it properly seeks a judicial declaration which will not alone free it from these dangers but also put a stop to practices opposed to the objectives of the Act. This is peculiarly a case for rendering a declaratory judgment. Thomas v. Railroad Co., 101 U.S. 71, 86, 25 L.Ed. 950; Cleveland C. & C. & St. L. Ry. Co. v. Hirsch, 6 Cir., 204 F. 849; Schley v. Andrews, 225 N.Y. 110, 121 N.E. 812. The refusal of relief here would in effect require continued performance of an illegal agreement, one hostile to public policy. See Kaiser-Frazer Corp. v. Otis & Co., 2 Cir., 195 F.2d 838.

The plaintiff's motion for judgment is granted and the defendant's cross motion denied.

Settle order on notice.