**TAFT, INGALLS & COMPANY et al.,
Plaintiffs,**

v.

**TRUCK DRIVERS, CHAUFFEURS &
HELPERS LOCAL UNION NO.
100, Defendant.**

**Civ. A. No. 4902.**

United States District Court
S. D. Ohio, W. D.

Feb. 20, 1962.

J. Mack Swigert and Hulse Hays, Cincinnati, Ohio, for plaintiff.

Jonas Katz, Cincinnati, Ohio, for defendant.

PECK, District Judge.

The complaint herein sets forth that the action arose under Section 301 of the Labor Management Relations Act (Act of June 23, 1947, 61 Stat. 156, 29 U.S.C. § 185 (1958), 29 U.S.C.A. § 185) and under the Declaratory Judgment Act (Act of June 25, 1948, 62 Stat. 964, as amended May 24, 1949, 63 Stat. 105, 28 U.S.C. § 2201 (1958)).

The complaint then alleges that one of the plaintiffs is the successor to the other, and that the latter *published* a newspaper of general circulation and was [then] engaged in an industry affecting commerce among the several states and was [then] an "employer" within the meaning of § 2(2) of the Labor Management Relations Act of 1947. Further allegations detail actions of the plaintiff which is stated to have formerly published a newspaper during the period of such publication; included in such actions was the execution of a contract with the defendant by an association in which such plaintiff's membership is alleged.

The defendant has filed a motion to dismiss the complaint or in the alternative to relinquish jurisdiction to the Common Pleas Court of Hamilton County, Ohio.

The underlying philosophy in vesting jurisdiction in the federal courts in matters affecting commerce among the several states is felt to be precisely what is clearly stated by that language, and is fulsomely defined in the Act itself: "The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." (29 U.S.C. §§ 185; 152(7)), 29 U.S.C.A. §§ 185, 152(7). The defendant's motion is predicated on the theory that neither in this definition nor in any other authoritative source is there any indication that the congressional intent was to establish jurisdiction concerning situations which might at some time in the past have affected commerce among the states. Stated differently, it is the defendant's contention that the purpose of this Act was to provide a federal forum for labor disputes that would affect the free flow of commerce, and the Act being phrased in the present tense, it follows that it is without application where as here the subject industry has been dissolved and is without further capacity to affect commerce.

At least inferential support of defendant's position is found in National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, page 31, 57 S.Ct. 615, page 621, 81 L.Ed. 893, wherein it is stated:

" 'The term "affecting commerce" means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce.' This definition is one of exclusion as well as inclusion. The grant of authority to the Board does not purport to extend to the relationship between all industrial employees and employers. Its terms do not impose collective bargaining upon all industry regardless of effects upon interstate or foreign commerce. It purports to reach only what may be deemed to burden or obstruct that commerce and, thus qualified, it must be construed as contemplating the exercise of control within constitutional bounds. It is a familiar principle that acts which directly burden or obstruct interstate or foreign commerce, or its free flow, are within the reach of the congressional power. Acts having that effect are not rendered immune because they grow out of labor disputes. * * * Whether or not particular action does affect commerce in such a close and intimate fashion as to be subject to federal control, and hence to lie within the authority conferred upon the Board, is left by the statute to be determined as individual cases arise." (Jurisdiction was held to attach because commerce was found to be affected.)

In a number of cases, including one decided by the Supreme Court, it has been held that jurisdiction over labor disputes only attached where the facts of the individual case indicated that the dispute actually threatened interstate or foreign commerce in a substantial manner. These cases are: National Labor Relations Board v. Associated Press, 2 Cir., 85 F.2d 56 (certiorari granted and affirmed, Associated Press v. National Labor Relations Board, 301 U.S. 103, 57 S.Ct. 650, 81 L.Ed. 953), National Labor Relations Board v. Planters Manufacturing Company, 4 Cir., 105 F.2d 750, National Labor Relations Board v. Hearst, 9 Cir., 102 F.2d 658, National Labor Relations Board v. Mid-Co Gasoline Company, 5 Cir., 172 F.2d 974, Local Union No. 12 Progressive Mine Workers of America, Dist. 1 v. National Labor Relations Board, 7 Cir., 189 F.2d 1 (certiorari denied, 342 U.S. 868, 72 S.Ct. 109, 96 L. Ed. 653), and Consolidated Edison Co. of N. Y. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126. While neither in any of these cases nor in any other cited or discovered did a situation exist where commerce was affected or threatened in the past, the clear holding of each is that the test is the present or future effect upon interstate

or foreign commerce of the labor situation giving rise to the action. The fact that the question was affirmatively resolved in each of these cases does not, of course, preclude the opposite result under other circumstances.

It is the contention of the plaintiffs that "if the contract was executed and effective when the signatories were in an industry affecting commerce, the federal courts have jurisdiction to entertain suits for their breach and for a declaration of rights under that contract," but submit no authority for this position. They cite Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, but in that case the industry had ceased business after the decision of the circuit court and the Supreme Court merely held that such cessation did not render the case moot where a continuing controversy existed as to the monetary award sought. Similarly, in Central Ice Cream Company v. Goldenrod Ice Cream Company, 7 Cir., 257 F.2d 417, the subject industry was involved in commerce at the time the action was commenced and is similarly without application here.

We conclude that the defendant's motion to dismiss the complaint is well taken and so hold, and it therefore becomes unnecessary to consider the defendant's alternative motion to relinquish jurisdiction to the state courts.