UNITED FURNITURE WORKERS OF AMERICA, AFL–CIO, and its Local No. 268, Plaintiffs,

v.

McCOY–COUCH FURNITURE MANUFACTURING COMPANY, Defendant.

No. LR–63–C–93.

United States District Court E. D. Arkansas, W. D.

Nov. 22, 1963.

James E. Youngdahl, McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., for plaintiffs.

Hayes C. McClerkin, Texarkana, Ark., for defendant.

HENLEY, Chief Judge.

This is a suit brought by a labor union and one of its locals, hereinafter collectively referred to as the Union, to secure specific enforcement of a collective bargaining agreement entered into between the Union and the defendant, an Arkansas corporation, on or about November 11, 1961, which contract was to extend through November 10, 1962. Jurisdiction is predicated solely upon section 301 (a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a).

The complaint alleges that the Union is a labor organization representing employees in industries affecting interstate commerce within the meaning of the National Labor Relations Act, 29 U.S.C.A. §§ 153–187; that the defendant is an employer which at all material times has been engaged in interstate commerce through its manufacture and sale of furniture products at and from a plant located in Benton, Arkansas; that the con-

tract in suit required defendant to make certain payments into a Union insurance fund; that payments were made to the fund by defendant during 1961 and the "early months of 1962"; that thereafter the defendant in violation of the contract refused to make further payments into the fund in spite of repeated demands for such payments; and that the Union should be awarded specific performance of defendant's obligation to make payments into the fund, together with an attorney's fee, costs, and other appropriate relief.

Defendant has moved to dismiss the complaint on the ground of lack of federal jurisdiction. The basis of the motion is that when the suit was filed in August of the current year, defendant had ceased operations and hence was no longer engaged in interstate commerce and was not an industry affecting interstate commerce within the meaning of the law. The fact of the cessation of operations is shown by the uncontroverted affidavit of Henry Moore, III, president of defendant.

In resisting the motion the Union asserts that it is seeking no relief with respect to the period following defendant's cessation of operations, that with respect to violations of the contract preceding such cessation the rights of the Union became vested when the violations occurred, and that the Court has jurisdiction to entertain the suit as far as such violations are concerned, notwithstanding defendant's cessation of its manufacturing and sales operations.[1]

The motion has been submitted upon the complaint, the motion itself, the Moore affidavit, and memorandum briefs, as authorized by Local Rule 8 of this Court.

In support of its motion defendant cites Taft, Ingalls & Company v. Truck

---

1. The Moore affidavit establishes that active operations ceased on September 10, 1962, although some isolated shipments of goods were made for a short time after that date. Defendant has not been dissolved as a corporation and still owns its properties in Benton which it leases to a company engaged in active manufacturing and sales operations. However, it is not suggested that there is any relationship between defendant and the operating concern other than that of lessor-lessee.

Drivers, Chauffeurs and Helpers, Local Union No. 100, W.D.Ohio, 202 F.Supp. 317. In resisting the motion plaintiff cites: United Steelworkers of America v. Enterprise Wheel Co., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424; Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972; Glendale Manufacturing Co. v. Local 520, 4 Cir., 283 F.2d 936; Item Co. v. New Orleans Newspaper Guild, 5 Cir., 256 F. 2d 855. However, the cases cited by plaintiff deal with mootness of controversy, rather than with the original jurisdiction of the federal courts, and this Court does not consider them dispositive of the question presented here.

Section 301(a) of the Labor Management Relations Act, insofar as here pertinent, provides that suits for violations of contracts between an employer and a labor organization representing employees "in an industry affecting commerce" may be brought in any district court of the United States having jurisdiction of the parties, without regard to the amount in controversy or to the citizenship of the parties

"Commerce," of course, means interstate or foreign commerce, 29 U.S.C.A. § 152(6). And 29 U.S.C.A. § 152(7) states that: "The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

While Taft, Ingalls & Co. v. Truck Drivers etc., Local Union No. 100, supra, supports defendant's position that section 301(a) jurisdiction does not exist with respect to a suit against an employer whose interstate operations have ceased when the suit is filed, and that this is true even though some of the alleged violations of the collective bargaining agreement took place while the employer's activities did affect interstate commerce, the Court finds itself unable to follow that decision in the case at bar.

As the Court reads it, section 301(a) vests the federal courts with jurisdiction with respect to suits "for violation of contracts" entered into, on the one hand, by an employer, and, on the other hand, by a labor organization representing employees in an industry affecting commerce. It seems clear to the Court that section 301(a) jurisdiction with respect to a suit between an "employer" and a labor union depends upon the status of the parties when the contract was made, and not at some later time. If when the contract was made one of the parties was an employer and the other party was a labor union representing employees who were then employed in an industry affecting commerce, jurisdiction is present, at least with respect to violations of contract committed while the employer's activities were affecting commerce. To hold otherwise would do violence to the plain wording of the statute, and would permit an employer to defeat federal jurisdiction simply by going out of business before he could be sued.

When the contract involved in the instant case was executed defendant was an "employer" engaged in active operations affecting commerce,[2] and the Union was a labor organization representing "employees in an industry affecting commerce." Hence, the Court has jurisdiction to grant the relief which the Union seeks.

It is recognized that, based upon the Court's interpretation of section 301(a) to the effect that jurisdiction is to be measured by the status of the parties to a collective bargaining agreement at the time the contract was made, a strong argument can be advanced that the Court's jurisdiction extends not only to contract violations committed prior to a cessation of interstate activities by an employer but also to violations occurring after the employer's activities cease to affect commerce. It is not necessary,

---

2. There is no question that the furniture industry in and around Benton constitutes or affects interstate commerce.

however, for the Court to go so far in this case. The defendant's contention, which the Court rejects, is that the Court has no jurisdiction whatever. And, as indicated, plaintiffs are not seeking relief with respect to any alleged violations after defendant's manufacturing and sales operations ceased.

An order is being entered denying the motion and directing defendant to answer the complaint within ten days after receipt by its attorneys of a copy of said order.